```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND

                                    :
LENA HARDAWAY, et al.
                                    :

     v.                             :   Civil Action No. DKC 11-1924

                                    :
EQUITY RESIDENTIAL MANAGEMENT,
LLC, et al.                         :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this disability discrimination action are motions to dismiss filed by Defendants Equity Residential Management, LLC, and EQR-Silver Spring Gateway Residential, LLC, f/k/a Silver Spring Gateway Residential, LLC (together, "Equity Residential") (ECF No. 21), and Shulman, Rogers, Gandal, Pordy & Ecker, P.A. ("Shulman Rogers") (ECF Nos. 22, 29). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, these motions will be granted.

**I. Background**

Plaintiffs Lena and Angelene Hardaway, proceeding *pro se*, commenced this action against Equity Residential and Shulman Rogers on July 14, 2011, concomitantly filing motions for leave

to proceed *in forma pauperis*.[1]  Five days later, Plaintiffs separately filed a motion for leave to amend and an amended complaint.  Soon thereafter, they moved for leave to file a second amended complaint and filed a motion for temporary restraining order.  By an order issued July 27, 2011, the court granted Plaintiffs' motions for leave to proceed *in forma pauperis* and for leave to file a second amended complaint and denied their motion for temporary restraining order.  Plaintiffs then filed a second amended complaint on July 27, 2011.

Plaintiffs subsequently filed a new complaint against the same defendants under a separate case number, accompanied by motions for leave to proceed *in forma pauperis*.  On August 15, 2011, the court directed Plaintiffs to explain why the new complaint should proceed as a separate action and, on August 31, ordered that the cases be consolidated and that the complaint in the second case be filed as a supplemental complaint in the original action.  The "supplemental complaint" is, in truth, a third amended complaint, as it encompasses all prior versions,

---

[1] In each of their numerous complaints, Plaintiffs have named "The Veridian" as a defendant.  It appears, however, that The Veridian is merely the name of an apartment complex and has no independent legal status.  (ECF No. 21-1, at 3 n. 2). Service for this defendant was effected by the United States Marshal upon a property manager at the apartment building on September 26, 2011.  (ECF No. 46).  The complaint identifies Equity Residential as the property management company.  Thus, it does not appear that The Veridian is a proper defendant and, insofar as may be, it has not been properly served.

adding a number of causes of action. (ECF No. 12). It is the operative pleading in the case and the following facts are drawn from it.

Plaintiff Angelene Hardaway resides at The Veridian – an apartment complex in Silver Spring, Maryland, managed by Equity Residential – and is "a person with disabilities." (*Id*. at ¶ 14). Plaintiff Lena Hardaway, a Connecticut resident, is Angelene's sister and is the payee of her disability benefits. She manages her sister's financial matters. Angelene owes rent for her apartment in the amount of $1,133.00 per month. She receives a housing voucher through a Montgomery County housing program in the amount of $1,069.00 per month, which is paid directly to The Veridian, and Lena pays the difference of $64.00, plus approximately $10-30 for sewer and water, on behalf of her sister.

The Veridian maintains an online "Rent Portal" through which tenants can manage their rent and utilities payments. On June 5, 2011, Lena accessed the Rent Portal and was surprised to learn that it showed Angelene as having an outstanding balance, despite the fact that she made timely payments, in full, each month. Lena paid the balance due and planned to discuss what she regarded as an excessive fee with the property manager the next time she came to visit.

Despite the fact that Lena paid the July rent on time and in full, on July 6, 2011, Angelene found a summons from the District Court of Maryland for Montgomery County on her apartment door, indicating that "The Veridian was suing [] Angelene for 'failure to pay rent – landlord's complaint for repossession of rented property under [Md. Code Ann., Real Prop. § 8-401].'" (*Id*. at ¶ 17 (emphasis omitted)).  Lena provided her sister with cancelled checks and other documentation evidencing her timely payment of rent, and Angelene went to the property management office on the same date.  There, she met with a leasing agent, Dana Williams, who insisted that she "owed over [one] thousand dollars" in "utilities bills."  (*Id*.). Angelene accessed her copies of these bills, which reflected that they were paid in full, but Ms. Williams, who "knew that [] Angelene was disable[d] [through] past communications," was not satisfied.  (*Id*.).  She advised Angelene that the matter could be taken up with attorneys.

Later the same date, Lena contacted Shulman Rogers, the law firm representing the apartment building in the landlord/tenant dispute in state district court.  She pleaded with an attorney, Matthew Moore, to review the rent payment history to see that rent was paid in full and on time.  He agreed to do so, but never returned her call.

4

Angelene and Lena, armed with proof of their timely payment of rent and utilities, attended a hearing in state district court on July 13, 2011. Lena pleaded her sister's case with the judge, apparently to no avail, and the Shulman Rogers attorney was unwilling to answer her questions. "The [j]udge order[ed] a trial date and moved to the next case before [] Lena could say anything [further]." (*Id.* at ¶ 21).

"On August 4, 2011, [] Angelene was shocked[] to find another summons attach[ed] to her apartment door." (*Id.* at ¶ 22). "The Veridian claim[ed] [that the] Housing Opportunities Commission (HOC) and [] Angelene never paid July rent and [that Angelene] owe[d] the full [amount] of $1,133 and a late fee of $52." (*Id.* at ¶ 22). In fact, according to Plaintiffs, Lena paid rent, in full, for July, August, and September, which the property managers refused to credit. The next day, Angelene met with an HOC agent who "analyzed [her] cancelled rent checks and was shocked to see [] Angelene was over[]paying The Veridian." (*Id.*). An HOC manager contacted Ms. Williams, who allegedly told the manager that Equity Residential "use[s] HOC rent payments to pay utilities," which the manager advised was illegal. (*Id.*). After the phone call, the HOC manager told Angelene to "get a lawyer." (*Id.*).

Plaintiffs allege that Equity Residential is "running an illegal scam to raise [] Angelene['s] rent," thereby breaching

5

her lease agreement and violating the "Montgomery County Moderately Priced Dwelling Unit Program." (*Id*. at ¶ 23). They contend that the complaints filed in state district court were "fraudulent" and designed to "force [Angelene] out of the apartment complex because of her disability and disability income." (*Id*. at ¶ 27). They assert that Defendants were aware of Angelene's disability at the relevant times and cite two incidents allegedly giving rise to an inference of discrimination. The first incident occurred in mid-July 2011 when Plaintiffs overheard an unspecified property manager reference a "disable[d] heavy set African American woman s[i]tting on [a] co[u]ch watching [television]" in the apartment's exercise facility, and say to her husband, "I cannot believe she [is] still here[;] she [has] been here all day." (*Id*. at ¶ 28). In the second incident, another Equity Residential agent, "after learning about Plaintiff[s'] first complaint," said to a co-worker as Angelene walked by, "she better belong in the [g]hetto." (*Id*. at ¶ 29). The complaint alleges violations of the Americans with Disabilities Act, the Rehabilitation Act, and the Fair Housing Amendments Act, along with numerous causes of action under state law. Plaintiffs claim damages of over five million dollars.

Equity Residential and Shulman Rogers responded by filing separate motions to dismiss on October 18, 2011. (ECF Nos. 21,

6

22).  Plaintiffs were advised by the clerk that potentially dispositive motions had been filed and of their right to respond, in writing, within seventeen days.  (ECF Nos. 23, 24). On October 20, 2011, they filed a document entitled "Objection – Motion to Dismiss," in which they assert that Angelene is disabled, cite their *pro se* status, and urge that their complaint not be dismissed due to any "technical errors" they may have made in drafting the complaints.  (ECF No. 26).  On the same date, they separately filed motions for default judgment against Equity Residential and Shulman Rogers.  (ECF Nos. 27, 28).[2]

Shulman Rogers filed a second motion to dismiss, addressing the additional charges raised in the "supplemental complaint," on October 24, 2011.  (ECF No. 29).  The next day, Plaintiffs filed an "amended objection" to the original motion to dismiss (ECF No. 32) and, on November 10, they filed papers opposing Shulman Rogers' second motion to dismiss (ECF No. 42).  Equity Residential filed reply papers on November 14.  (ECF No. 43).

---

[2] These motions are clearly without merit, as all defendants have filed timely responses to Plaintiffs' complaints. Accordingly, they will be denied.

7

## II. Standard of Review

Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).³ The purpose of a motion to dismiss is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in the complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir.

---

³ Equity Residential additionally argues that because Plaintiffs have failed to state a claim for relief under a federal cause of action and the parties are not diverse, the court lacks subject matter jurisdiction to consider the remaining state law claims. As will be seen, however, the court may exercise supplemental jurisdiction over the remaining claims. Thus, subject matter jurisdiction is not implicated.

1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  Complaints filed by *pro se* litigants are "to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).  The court need not, however, accept unsupported legal allegations.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Since *Iqbal* and *Twombly* were decided, the Fourth Circuit has observed that:

> [T]hose decisions require more specificity from complaints in federal civil cases than was heretofore the case. The Supreme Court in *Twombly* articulated a "two-pronged approach" to assessing the sufficiency of a complaint. *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. First, a complaint must contain factual allegations in addition to legal conclusions. Federal Rule of Civil Procedure 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 590 U.S. at 555, 127 S.Ct. 1955. Therefore, "'naked assertion[s]' devoid of 'further factual enhancement'" are not enough. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Second, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). Plausibility requires that the factual allegations "be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see also Glassman v. Arlington Cnty.*, 628 F.3d 140, 145-46 (4th Cir. 2010).

*Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d 278, 288 (4th Cir. 2012).

Plaintiffs may not simply argue that they will have evidence by the time of trial after an opportunity for discovery. Instead, they are required to provide more than conclusions in the complaint itself. On a motion to dismiss, as Judge Williams recently observed:

10

> [T]he question is whether, construed in a light favorable to [the plaintiff], it is plausible that [the plaintiff] could prevail on its . . . claim with the benefit of discovery. *See Boyd v. Coventry Health Care Inc.*, 828 F.Supp.2d 809, 817 (D.Md. 2011); *see also* [*Twombly*, 550 U.S. at 556] ("plausibility" pleading standard "calls for enough fact[s] that discovery will reveal evidence of [a viable claim]").

*Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, --- F.Supp.2d ---, 2012 WL 3090297, at *2 (D.Md. 2012).

**III. Analysis**

    **A.   The Federal Claims**

Plaintiffs bring federal claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq*. The sufficiency of the well-pleaded allegations as to each of those claims will be addressed, in turn.

    **1.   The Americans with Disabilities Act**

The Americans with Disabilities Act ("ADA") is "aimed at discrimination against the handicapped in four broad areas: transportation, public accommodations, telecommunications, and employment." *U.S. v. Southern Management Corp.*, 955 F.2d 914, 922 (4th Cir. 1992). Title III of the ADA, addressing public accommodations – the only area potentially implicated here – provides that "[n]o individual shall be discriminated against on

11

the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The term "public accommodation" is defined by statute as "[private] entities [which] affect commerce – [including] an inn, . . . a restaurant, a motion picture house, . . . an auditorium, . . . or a place of public gathering." *White v. Secor, Inc.*, Civ. No. 7:10-cv-00428, 2010 WL 4630320, at *2 (W.D.Va. Nov. 5, 2010) (quoting 42 U.S.C. § 12187(7)). "To state a claim under Title III of the ADA, a person alleging discrimination must show, *inter alia*, that [she] is disabled within the meaning of the ADA and that the defendant is a private entity that owns, leases, or operates a place of public accommodation." *White*, 2010 WL 4630320, at *2.

Defendants argue that "[r]esidential facilities such as The Veridian simply 'do not fall within the meaning of public accommodation'" and that, in any event, the well-pleaded allegations in the complaints "do not present a sufficient factual basis upon which the [c]ourt could conclude either that [] Angelene was disabled within the meaning of the ADA, or that any [d]efendant discriminated against her because of that alleged disability." (ECF No. 21-1, at 6 (quoting *Hanks v.*

12

*Tilley*, Civ. No. 98-789, 1999 WL 1068484, at *2 (M.D.N.C. Feb. 2, 1999)).

A number of courts have found that "residential facilities – such as apartments and condominiums – do not fall within the definition of public accommodation." *Gragg v. Park Ridge Mobile Home Court, LLP*, No. 10-1313, 2011 WL 4459701, at *4 (C.D.Ill. Sept. 26, 2011); *see also Radivojevic v. Granville Terrace Mutual Ownership Trust*, No. 00 C 3090, 2001 WL 123796, at *3 (N.D.Ill. Jan 31, 2001); *Hanks*, 1999 WL 1068484, at *2; *Independent Hous. Servs. v. Fillmore Ctr. Assocs.*, 840 F.Supp. 1328, 1344 & n. 14 (N.D.Cal. 1993). The receipt of housing vouchers, moreover, "is an insufficient basis upon which to deem the premises – a private, residential apartment complex – a place of public accommodation." *Reyes v. Fairfield Properties*, 661 F.Supp.2d 249, 264 n. 5 (E.D.N.Y. 2009) (citing *Bobrowsky v. Curran*, 333 F.Supp.2d 159, 163 (S.D.N.Y. 2004)). Thus, the public accommodation provision of the ADA cannot apply against The Veridian.

Even if it did, Plaintiffs have failed to assert that Angelene has a disability covered under the ADA; indeed, the complaint merely recites that she is "a person with disabilities." *See Coleman v. Prince George's Co. Dept. of Soc. Servs.*, Civ. No. DKC 2009-0213, 2010 WL 917871, at *3 (D.Md. Mar. 8, 2010) ("Plaintiff's mere assertion" that he has a

13

disability "is insufficient to show that he meets the definition of disability" under the ADA or Rehabilitation Act). Insofar as Plaintiffs have alleged that Angelene receives disability benefits, it is likely that she suffers from a disability cognizable under the ADA and that a deficiency in the operative complaint in this regard could be cured by amendment. Further amendment would be futile, however, because Plaintiffs have also failed to set forth – in the original complaint and two amended versions – any plausible facts which, if proven, would show that the alleged overcharging of rent and/or utilities was motivated by discriminatory animus. *Croley v. Hunting Creek Club Condo. Assoc.*, No. 105CV1326CMHBRP, 2005 WL 5269272, at * (E.D.Va. Dec. 13, 2005) (dismissing housing discrimination claim where the plaintiff did not "allege with any substance that any of his perceived discrimination is the result of a handicap."). The two comments allegedly overheard by Plaintiffs, while certainly insensitive, do not even refer to a disability, and Plaintiffs' subjective belief alone that discrimination was a motivating factor is insufficient "to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Accordingly, Plaintiffs' claim under the ADA will be dismissed.

  **2. The Rehabilitation Act**

Section 504 of the Rehabilitation Act parallels the ADA, prohibiting a federally funded state program from discriminating

14

against a handicapped individual solely on the basis of her disability. *See School Board of Nassau County v. Arline*, 480 U.S. 273, 275 (1987). Pursuant to 29 U.S.C. § 794(a):

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

To set forth a sufficient claim of discrimination under Section 504 of the Rehabilitation Act, a plaintiff must allege (1) that she has a disability; (2) that she is "otherwise qualified"; (3) that she "was excluded from participation in, was denied the benefits of, or was subjected to discrimination solely by reason of [her] disability"; and (4) that the defendant "receives federal financial assistance." *Proctor v. Prince George's Hospital Center*, 32 F.Supp.2d 820, 826 (D.Md. 1998) (citing *Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995)).

As noted, the instant plaintiffs have not asserted facts sufficient to show that Angelene is disabled within the meaning of the relevant provision, nor have they set forth plausible allegations giving rise to an inference that the objectionable conduct was related to any disability. Moreover, Plaintiffs

15

have not alleged that Defendants receive federal financial assistance. Accordingly, their Rehabilitation Act claim cannot be sustained.

### 3. **The Fair Housing Amendments Act**

The Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988 ("FHA"), makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person[.]"  42 U.S.C. § 3604(f)(2)(A).  Such discrimination may include refusal "to permit . . . reasonable modifications of existing premises" or "to make reasonable accommodations in rules, policies, practices, or services[.]"  42 U.S.C. § 3604(f)(3).  To state a claim of discrimination under § 3604(f), a plaintiff "must show that [she] is handicapped and that [she] was either discriminated against because of [her] handicap or denied a reasonable accommodation necessary to allow [her] the same use and enjoyment of [her] dwelling as other non-handicapped persons."  *Roberson v. Graziano*, Civ. No. WDQ-09-3038, 2010 WL 2106466, at *2 (D.Md. May 21, 2010).

Plaintiffs have not set forth the requisite allegations here.  In addition to failing to elaborate on the nature of Angelene's disability, they have not alleged a plausible nexus

16

between her disability and the alleged discriminatory acts. Moreover, they have set forth no facts suggesting that a reasonable accommodation was requested or denied. Accordingly, Plaintiffs' FHA claim will be dismissed.

### B. The State Law Claims

Because subject matter jurisdiction is based on the federal ADA, Rehabilitation Act, and FHA claims, which will be dismissed, and the parties are not diverse, questions arise as to (1) whether the court may exercise supplemental jurisdiction over the remaining state law claims, and (2) if so, whether it should. Pursuant to 28 U.S.C. § 1367(a), the court may exercise supplemental jurisdiction over "all [nonfederal] claims that are so related to [federal] claims in the action . . . that they form part of the same case or controversy[.]" Here, the remaining state law claims – *i.e.*, alleging fraud, negligence, and related causes of action – are sufficiently related to the federal claims such that the court may exercise supplemental jurisdiction over them. *See White v. County of Newberry, S.C.*, 985 F.2d 168, 172 (4th Cir. 1993) (supplemental claims "need only revolve around a central fact pattern" shared with the federal claim). Still, the court "may decline to exercise supplemental jurisdiction . . . [if it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In deciding whether to exercise discretion to consider supplemental

17

claims, courts generally look to factors such as the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). Ultimately, supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id*. (quoting *Carnegie-Mellon Univ*, 484 U.S. at 350).

Here, the court declines to exercise supplemental jurisdiction over the remaining state law claims. Considering that at least some of these claims relate to proceedings that were ongoing at the time Plaintiffs filed their complaints, concerns of comity strongly militate in favor of Maryland state courts deciding the remaining issues. Thus, the state law claims will be dismissed without prejudice to Plaintiffs' right to re-file in state court, should they so choose.

**IV. Conclusion**

For the foregoing reasons, the motions to dismiss filed by Equity Residential and Shulman Rogers will be granted. A separate order will follow.

                                                           _____/s/_____
                                                           DEBORAH K. CHASANOW
                                                           United States District Judge